In re **HANOFF.**

No. 23495–S.

District Court, N. D. California, S. D.

May 28, 1941.

Andersen & Resner, of San Francisco, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., and Wm. E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., and A. Kuckein, Inspector in Charge, Legal Division of United States Immigration and Naturalization Service, for respondent.

ST. SURE, District Judge.

Applicant, an alien, detained for deportation by the District Director of Immigration and Naturalization for the Port of San Francisco, seeks his liberty through a writ of habeas corpus and asks that he be released on bail pending proceedings.

Petitioner was arrested on March 8, 1930, upon a warrant issued by the Secretary of Labor charging that petitioner is in the country in violation of the Act of October 16, 1918, as amended June 5, 1920, 8 U.S. C.A. § 137, in that he is a member of an organization or group that believes in, advises, advocates, and teaches the overthrow by force or violence of the Government of the United States. He was released from custody upon the posting of a $1,000 U. S. Liberty Bond, and, after hearing, was, on December 5, 1930, ordered deported to the Union of Soviet Socialist Republics. He was permitted to remain at large upon the posted bond. On August 25, 1932, demand was made upon the Secretary of Labor either to deport petitioner or return the bond, followed by suit to enforce return. In the suit it was alleged that the Government was unable to deport petitioner to Russia, the country of his birth, which fact was not denied. Thereafter the bond was returned and petitioner was at liberty until May 20, 1941, when he was rearrested upon order of the Department of Justice[1] on the original deportation warrant. Petitioner alleges that his arrest and detention is in violation of the First, Fifth, and Fourteenth Amendments to the Constitution, and that continued detention will visit cruel and inhuman punishment upon him because of the precarious condition of his health.

In his verified return to the order to show cause the District Director states, in part, as follows:

"That affiant has been informed by the Special Assistant to the Attorney General in charge of the Immigration and Naturalization Service that he now has reason to believe that deportation of petitioner can be effected, that it is the policy of the Attorney General to rearrest on the original deportation warrant those aliens heretofore ordered deported under the provisions of the Act of October 16, 1918, as amended, who have since the issuance of such warrant persisted in their membership affiliations and activities with an organization such as is mentioned in said Act and that the Immigration authorities have definite information and evidence showing that petitioner has, subsequent to the 5th day of December, 1930, persisted in a flagrant manner in such membership affiliations and activities and is a high official in such an organization, to wit: the Communist Party of the United States of America.

"That for the foregoing reasons and pursuant to directions of the Special Assistant to the Attorney General in charge of the Immigration and Naturalization Service petitioner was taken into custody by affiant on the 20th day of May, 1941, and held without bail pending completion of arrangements for his deportation."

Petitioner insists that he should be immediately given his liberty, or, if not, the time for the execution of the warrant should be limited, and he should be admitted to bail by this Court pending deportation.

 It is too well settled by the decisions of the Supreme Court to require any citation of authority that an alien resident may be deported for any reason which Congress has determined will make his residence here inimical to the best interests of the Government. Skeffington v. Katzeff, 1

---

[1] The administration of the immigration and naturalization laws was transferred from the Department of Labor to the Department of Justice on June 14, 1940.

Cir., 277 F. 129, 131. And while an alien inhabitant may invoke the protection of the Constitution, if he is found to be here in violation of law he may not be heard to say his rights have been invaded. Turner v. Williams, 194 U.S. 279, 289, 24 S.Ct. 719, 48 L.Ed. 979.

▪ ██ Attention is called to the fact that petitioner has been available for deportation for a period in excess of ten years. It is urged that the old warrant has become functus officio because it was not executed within a reasonable time. Until recently taken into custody petitioner was not restrained of his liberty. "Surely there is nothing in this case showing that the delay in deporting the petitioner worked a disadvantage to him. If anything he profited by it." Restivo v. Clark, 1 Cir., 90 F.2d 847, 851. During a part of the time diplomatic relations did not exist between the United States and the Soviet Republics and deportation of aliens was therefore impossible. The Attorney General now represents that he has "reason to believe that deportation of petitioner can be effected." The return further shows "that petitioner has, subsequent to the 5th day of December, 1930, persisted in a flagrant manner in * * * membership * * * activities and is a high official in * * * the Communist Party of the United States of America." As supporting this last statement, there are in evidence excerpts from the testimony of witnesses given in the deportation case of Harry R. Bridges now being heard in San Francisco.

██ Under the circumstances I think that petitioner is not entitled to an immediate discharge. A broad discretion is allowed the Attorney General to find ways or means to execute the original deportation warrant. "The utmost the courts can or will do is to discharge the [petitioner] from further imprisonment if the government fails to execute the order of deportation within a reasonable time." Caranica v. Nagle, 9 Cir., 28 F.2d 955, 957; Seif v. Nagle, 9 Cir., 14 F.2d 416, 417. See also Wolck v. Weedin, 9 Cir., 58 F.2d 928, 931; Saksagansky v. Weedin, 9 Cir., 53 F.2d 13, 16; United States v. Wallis, 2 Cir., 279 F. 401, 403.

When petitioner was first arrested he was released upon bond fixed and approved by the Secretary of Labor.

██ Upon the question as to whether courts have inherent power to admit to bail in deportation cases the decisions are in conflict. It is suggested this was occasioned by the dictum in Wright v. Henkel, 190 U.S. 40, page 63, 23 S.Ct. 781, page 787, 47 L.Ed. 948, an extradition case, wherein it is said: "We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute." 36 A.L.R. 888. In United States ex rel. Ng Hen v. Sisson, D.C., 220 F. 538, 540, Judge Learned Hand, with his usual perspicacity, observed: "This matter has been the subject of a confusion which it seems to me the subject does not justify. A writ of habeas corpus does not put the relator into the custody of this court. It does not assume to disturb the custody of the person then detaining the relator. It requires his production and examines the legality of the custody. This court has no proper power to enlarge the relator while the inquiry proceeds, and less power to do so after the writ has been dismissed. If the writ be sustained, and the prisoner discharged, then the court might provide for bail to insure his appearance if the ruling were reversed, but only in that case. Till the writ be sustained, the question of bail depends entirely upon the rules regulating the relator's custody where he already is."

Later in United States ex rel. Carapa v. Curran, 297 F. 946, 36 A.L.R. 877, the 2d Circuit, in a well-considered decision, held, without dissent, that the power to admit to bail is not a power inherent in the Federal courts, and that it is not necessary that a court should be possessed of such power in order that it may perform its functions and administer the laws.

Some of the confusion may have resulted from early District Court decisions in Chinese exclusion cases in which the doctrine of inherent power was maintained. In affirming an order of the lower court the 9th Circuit in Chin Wah v. Colwell, 187 F. 592, 594, said: "The power to admit to bail in deportation cases, if it exists, is created by implication in those provisions of the exclusion acts in which it is declared there shall be no admission to bail in certain specified instances. * * * In view of the fact that there was no authority to admit to bail in deportation cases prior to the act of 1892 [8 U.S.C.A. §§ 263, 281 et seq.], and that the power to admit to bail rests in implication, from the express prohibitions of that act and of the act of 1893, we think the reasonable construction is that no greater power is given than that which is

necessarily to be implied, and that it is a power, therefore, to be exercised by the court in its discretion."

However, Judge Gilbert, author of the opinion, experienced no confusion upon the question of the court's inherent power to admit to bail in deportation cases. At page 594 of 187 F. he discussed the dictum in Wright v. Henkel, supra, saying: "But the language of the court in that case is not to be taken as by analogy affirming the proposition that the courts of the United States have the inherent power to admit to bail in deportation cases. It is uniformly conceded that those courts can exercise no powers not vested in them by statute." The rule thus established is binding upon this Court.

The Exclusion Acts, 8 U.S.C.A. § 263 et seq., and the Immigration Act of February 20, 1907, 34 Stat. 898, the latter governing the present case, are separate and distinct. Section 20 of the Immigration Act, 8 U.S.C.A. § 156, provides: "Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Secretary of Labor," etc. Petitioner cites Prentis v. Manoogian, 6 Cir., 16 F.2d 422, 423, wherein, in speaking of the above quoted language, the court construed the words "may be released" to mean "must be released." That case concerned an alien whose hearing was still pending before the immigration authorities, while here the hearing has taken place and the warrant of deportation has been issued. The case cited is not in point. Even if petitioner has the right to bail under the provisions of the Immigration Act, the power to admit to bail is not reposed in this Court.

The petition for the writ, also the application for bail pending deportation, will be denied.